UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| Joseph REGENSBERGER, : | |
|     Plaintiff, : | |
| : | |
| v. : | Civ. No. 3:04cv1900 (PCD) |
| : | |
| CITY of WATERBURY, et al., : | |
|     Defendants. : | |

**RULING ON PLAINTIFF'S MOTION TO EXCLUDE
DR. RICHARD McCLEARY AS AN EXPERT WITNESS**

Plaintiff, Joseph Regensberger, moves [Doc. No. 29] that Dr. Richard McCleary of Irving, California, who has been noticed as an expert witness in the above-captioned matter, be excluded as an expert witness because his opinions are allegedly irrelevant, immaterial, and prejudicial to Plaintiff's cause of action. More specifically, Plaintiff contends that McCleary's expert testimony raises issues that were expressly rejected by the City as a predicate for the adoption of the Regulations at issue and that the Plaintiff had a legal right to rely upon the legislative history of the ordinance in question. For the reasons that follow, Plaintiff's motion is **denied**.

**I.    Background**

Familiarity the with facts of this case is presumed. Accordingly, only those facts relevant to the Court's resolution of this motion are discussed. On February 26, 2004, the Zoning Commission for the City of Waterbury held a public hearing relating to the "Zoning Text Amendment relative to Adult Entertainment Establishments, as submitted by City Planner James A. Sequin, AICP." At that meeting, James Sequin, among others, entertained questions and commented on the proposed amendment. On May 27, 2004, at a subsequent public hearing, the

Commission voted unanimously to approve the amendment.

Plaintiff thereafter filed a complaint alleging that Defendant City of Waterbury has imposed unconstitutional zoning regulations which limit the location of new adult businesses within the city. Discovery in the case has concluded and the parties are scheduled to submit dispositive motions by the end of this month. Plaintiff moves, however, to exclude the testimony of Defendants' disclosed expert witness Dr. McCleary on the grounds that the Commission's approval of the amendment was predicated on adverse secondary effects on property values within the city, and not with respect to the issue of crime-related secondary effects on which Dr. McCleary is expected to testify.

## II.     Discussion

Plaintiff argues that the issue of crime-related secondary effects is irrelevant because that justification was not proffered during the Commission's public hearing or elsewhere in the legislative history supporting the Commission's adoption of the amendment. If the expert is permitted to testify, Plaintiff contends that the lack of a record establishing the Commission's reliance on crime-related secondary effects would prevent him from disproving Dr. McCleary's testimony and furthermore, in any event, the period for disclosing its expert witnesses has concluded.

"The First Amendment does not require a city, before enacting . . . an ordinance [addressing negative secondary effects associated with sexually oriented speech], to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses. Renton v. Playtime Theatres, Inc., 475 U.S. 41, 51-52, 106 S. Ct. 925, 89 L.

Ed. 2d 29 (1986)).  The evidence that the municipality relies upon, however, "must fairly support the municipality's rationale for its ordinance." City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 438, 122 S. Ct. 1728, 152 L. Ed. 2d 670 (2002).  "If plaintiffs succeed in casting doubt on a municipality's rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance."  Alameda Books, 535 U.S. at 438-39.

Plaintiff in this case concedes that Defendants have submitted sufficient evidence to meet their minimum evidentiary burden under the Alameda test, but argue that Defendants relied not on crime-related secondary effects, but solely on the negative effect on property values in commercial and residential areas within the City of Waterbury, and thus should not be permitted to supplement the record with respect to crime-related secondary effects.  Plaintiff argues that he cannot effectively cast doubt on a rationale not relied upon by the city when adopting the amendment and that, in any event, he would not at this point be permitted to proffer expert testimony in support of this position because the period for disclosing experts has concluded.

In support of his position, Plaintiff focuses specifically on Sequin's statement at the public hearingthat his "conversations with the police department said they really didn't see much of a difference between the existing adult establishments and the increase in crime, so I am not offering that as a justification."  (Tr. at 17.)  From this statement Plaintiff argues that "the issue of crime-related secondary effects never played a part in the adoption of the Regulation at issue."

Defendants point to other statements made by Sequin at the hearing.  More specifically, Defendants highlight Sequin's reference to several studies from other cities establishing crime as

3

an "adverse secondary effect" of adult establishments.

> Denver, Colorado – 1998 . . . That commended that the perception that the presence of SOBs lowers property values, generates crime and contributes to overall decrease in the quality of life . . . .

> Indianapolis, Indiana – 1994 . . . found major crime was 23% higher in the study areas . . . .

> New York City 1994 . . . An examination of numerous studies as we are doing here tonight from other localities found that adult entertainment uses have secondary impacts such as crime rates, depreciation of property values, deterioration of community character and the quality of life . . . .

In addition to Sequin's reference to these studies, Defendants point to comments of Patrick Zailckas, Chairman of the Commission. Zailckas stated that he was, among other things, "particularly concerned about the . . . destabilizing of the neighborhoods that was brought forth by all the studies that Mr. Sequin brought to [the Commission's] attention." Based upon these statements, Defendants argue that it is reasonable to infer that the Commission considered more than just decreased property values as an adverse secondary effect.

Plaintiff's reliance on Sequins' express statement at the hearing that he was not offering crime-related secondary effects as a justification is not particularly persuasive, as he is not a member of the Commission and therefore did not cast a vote for or against the approval of the amendment. Furthermore, during the hearing at which the amendment was adopted, Chairman Zailckas expressly stated, among other things, that he was "particularly concerned about the . . . destabilization of neighborhoods that was brought forth by the studies that Mr. Sequin brought to [his] attention" that the Commission had "ample evidence in [its] file and on record . . . substantiat[ing] the destabilizing effects that these types of establishments have in nearby areas." (Defs.' Supp. Ex. at 2.) In concluding that he strongly supported the adoption of the amendment,

4

and "[i]n view of . . . [the] affect on the surrounding areas with destabilization," the Committee unanimously approved the amendment.

In light of the public hearing transcripts discussed above, the Court cannot conclude that Defendants' disclosure of Dr. McCleary as an expert witness is inappropriate. The record of the public hearing, although not replete with references to crime-related secondary effects, specifically references crime-related effects studies conducted in three other cities. Furthermore, in addition to the adverse effect on property values, the Committee referenced "destabilizing effects" when adopting the amendment which, in view of the entire record, may reasonably have included crime-related secondary effects. Finally, Dr. McCleary's testimony is likely to be relevant to the case and Plaintiff has not established at this juncture that the probative value of any such evidence is substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403. In addition, Plaintiff makes no representation that Dr. McClearly lacks the skill, experience, training, or education to testify as an expert in this case. See Fed. R. Evid. 702.

### III.   Conclusion

In light of the foregoing, Plaintiff's motion to exclude Dr. Richard McCleary as an expert witness is denied.

SO ORDERED.

Dated at New Haven, Connecticut, January  13 , 2006.

>                    /s/
>            Peter C. Dorsey
>        United States District Judge